## CONSTRUCTION ON MECHANICS' LIEN LAW.

Common Pleas Court of Licking County.

### G. W. LANE v. BAILEY & KEELEY ET AL.

Decided, January Term, 1908.

*Liens—Of Sub-contractors and Material Men—Subordinate to Set-off of Debt Due Owner, When—Payment of Judgment against Owner and Contractor Jointly Tantamount to Payment to Contractor, When—Sections 3193 and 3194.*

The owner of a building may set-off an antecedent debt due to him from the contractor who erected the building against the amount remaining due on the contract to the exclusion of claims by sub-contractors and material men, notwithstanding the contract did not provide that payment should be made in advance or make any statement of the amount due the owner from the contractor at the time of entering into the contract.

*Wayne Collier,* for plaintiff.

*Frederick M. Black, A. A. Stasel* and *Robbins Hunter,* for defendant.

SEWARD, J. (orally).

This is a suit brought by a sub-contractor against the owner of the premises, for a claim due the sub-contractor from the

principal contractor.   Lane claims the sum of $105.10 as sub-contractor under Rose, the principal contractor.   He filed his statement under the statute with Bailey & Keeley, the owners, on April 25th, 1906.   He notified Rose on the next day, Rose being the principal contractor.

I do not think there is any question raised here but that the plaintiff, Lane, has perfected his right to the amount he claims in this fund.   The controversy arises upon the answer and cross-petition of Vogelmeier Bros.   They claim a right to participate in the funds in the hands of Bailey & Keeley due the contractor, Rose, for brick and stone furnished the contractor under his contract with the owner.   They say in their answer that the contract price for the building was $5,225, and it is not controverted but what that was the contract price; that the contract between the owner and Bailey & Keeley was entered into in 1905—some time in the latter part of 1905; that their contract with Rose was made in February, 1906; that from February 1, 1906, to April 2, 1906, they furnished brick to the amount of $794.50, for the construction of this building; that they contracted with Cramer, who was a sub-contractor, under Rose, January 17, 1906, to furnish the stone; and on that day they did furnish stone in the amount of $465; that on June 30, 1906, they filed a statement with the said Bailey & Keeley, and notified Rose of the filing of the same.

Bailey & Keeley admit that there is in their hands the sum of $1,003.47, which they are willing to pay, upon the order of the court, and they say that there is in their hands no more than that.   They admit that the contract price was $5,225.; that the work was to be completed April, 1906, and May 15, 1906—the tin-shop so that it could be used in April, and the balance of the building in May.   The contract provided that Bailey & Keeley were to pay Rose $300 every two weeks until $1,500 had been paid.   The balance was to be paid to Rose upon the completion of the building.

Payments according to the evidence before the court, were made as follows:   To Rose himself.   January 27, 1906, note of Rose, due Bailey & Keeley, $72.39;   January 27, 1906, check,

$300; February 10, 1906, check, $150; February 17, 1906, cash, $30; February 24, 1906, check, $300.

I should say, about one of these $300 payments, that it is not set out in the answer to the interrogatories, but the testimony introduced shows that there was $300 paid, which is not mentioned in the answer to the interrogatories.

March 10, 1906, $300 was paid; April 14, 1906, $227.92; May 5, 1906, $200; there was paid on orders from Rose, the following sums: February 10, Norris bill, $19.70; March 10, 1906, William Nash, $6.25; March 30, 1906, Farabee judgment, $113.20. The judgment was in a case where Farabee sued Rose and Bailey & Keeley for leaving some material in the street, which he ran over and broke his buggy, or injured his horse. He sued Bailey & Keeley and Rose, and got a judgment against them for $113.20. Rose gave to Bailey & Keeley an order to pay the judgment, and they paid it, March 30, 1906. April 14, 1906, was paid the Norris note, $47.93; April 14, 1906, Nash bill, $5; May 14, 1906, Gorsuch, $33; May 2, 1906, Montgomery, $878.94; June 9, 1906, Timmer, $1.70; making $1,104.02. Amount paid Rose, $1,533.40. Including in the amount paid on order, is the Farabee judgment, as I have just mentioned.

Have the defendants the right to deduct a claim that they had against Rose, as against the contract price of the building— $5,225? They had a claim against Rose, and they deducted that from the amount due Rose on the contract. It is claimed by Vogelmeier Bros. that they have no right to deduct this $1,533.40, because the contract with Rose did not provide that the payment should be made in advance, and did not make any statement of the amount due Bailey & Keeley at the time of entering into the contract with Rose.

I will first refer to the sections of the statutes governing in such cases—Sections 3193-4—and the subsequent sections relating to the liens of sub-contractors.

"Any sub-contractor, material-man, laborer or mechanic, who has performed labor or furnished material, fuel or machinery, or who is performing labor, or furnishing material, fuel, or machinery, or who is about to perform labor, or furnish ma-

terial, fuel or machinery for the construction, alteration, removal or repair of property, appurtenances or structure, as described in sections three thousand one hundred and eighty-four and three thousand one hundred and eighty-six, or for the construction, improvement or repair of any turnpike road improvement, sewer, street or other public improvement, or public building provided for in a contract between the owner, or any board, officer or public authority and a principal contractor, and under a contract between such sub-contractor, material-man, laborer or mechanic and a principal contractor or sub-contractor, may at any time of beginning to perform such labor or furnish such material, fuel or machinery, or at any time thereafter, not to exceed four months from the performance of such labor or the delivery of such machinery, fuel or material, file with the owner, board or officer, or the authorized clerk or agent thereof, a sworn and itemized statement of the amount and value of such labor performed, and to be performed, material, fuel or machinery furnished, containing a description of any promissory note or notes that may have been given by the principal contractor or sub-contractor on account of said labor, machinery or material, or any part thereof, with all credits and set-offs thereon.''

The section of the statute, of which this is an amendment, did require notice, but this section does not; and so the Legislature evidently had in mind the section of which this is an amendment.

''Section 3194. Upon receiving the notice required by the preceding section, such owner, board or officer or public authority or authorized clerk, agent or attorney thereof, shall detain in his hands all subsequent payments from the principal or sub-contractor to secure such claims and the claims and estimates of other sub-contractors, material-men, laborers, mechanics, or persons furnishing materials to or performing labor for any contractor or sub-contractor who may intervene before the next subsequent payment under the contract, or within ten days thereafter.''

Section 3193 provides for filing an itemized statement. I think a fair construction of Section 3194 means—although it says ''notice''—that he shall retain from the amount due the contractor all subsequent payments, and for ten days after the

service of the notice, so that any other sub-contractor may come in and participate in the lien by filing his itemized statement.

The Legislature, in passing the law, had in view two different branches of liens. One was a lien against the building or the structure, and they provided that the lien should date from the date of the first item of material furnished, or labor performed. The other feature that they had under consideration was the claim against the fund in the owner's hand still due the principal contractor; and as to that, the claim is fixed as of the date of filing the notice. The lien against the building goes back to the time when the first material was furnished, or the first labor performed.

The Supreme Court (and Vogelmeier Bros. claim that this is decisive of their contention in the case) hold, in the 44th O. S., page 420:

"1. The statutes of this state upon the subject of mechanic's liens, being remedial in their nature, are to be liberally construed in order to carry out the purpose of the Legislature in their enactment.

"2. Where a mechanic who, under the employment of a contractor and with the knowledge of the owner, has performed labor in the construction of a building, and the account not being paid takes all necessary steps as provided by Sections 3193, 3195, 3202 of the Revised Statutes, to fix the liability of the owner and to obtain a lien upon the premises, and brings his action against the owner to recover the amount due and have the same declared a lien, such account being less than the balance paid on the contract, such owner can not be allowed to set off a claim against the contractor, not growing out of the contract, acquired by him after the labor was performed, although such claim was acquired before notice that the mechanic's demand had not been paid."

This was a case where Asa Bullock entered into a contract with Horn to erect a building for him. The building was finished in August, 1883. Another Bullock had performed labor for Asa Bullock on that contract and finished his labor on August 25, 1883. On that date he made a demand upon Asa Bullock for the payment of his claim, but was refused. On

the 11th of September he filed his claim with Horn (the defendant in the action) ; he filed an itemized statement, or notice, as the statute required, and perfected his lien. Horn, before the itemized statement was filed with him, purchased in good faith, not knowing but what the claim of Bullock had been paid, a claim against Horn from a lumber company, of which he was a stockholder, and he attempted to set that off against the claim of Bullock, the sub-contractor. The court held that he could not do that; that it did not grow out of the contract that was made between Horn and Asa Bullock. That is, that it was acquired after the contract was made—after the work was completed, and after notice that Bullock, who. claimed the lien, had performed labor on the building, though he did not have notice that he had not been paid.

The distinguishing feature between that case and the case at bar .is that that is a claim which was purchased by the owner against the principal contractor, and was attempted to be set off. It was not a claim due him. It was a claim that was purchased after the labor was performed by the sub-contractor, and for which he was attempting to assert his lien.

In *Stark* v. *Simmons*, 54 O. S., 435, the Supreme Court say:

"The liability of the owner of a building to a contractor for labor to be performed thereon is *pro tanto* compensated and discharged by a valid claim against such contractor, the claim being due to such owner when the contract for labor is entered into."

Now, the only question for consideration here is, whether the claim was due Bailey & Keeley at the time that this notice was served upon Bailey & Keeley.

"In the absence of fraud and collusion the owner may insist upon such compensation against a sub-liener." *Stark* v. *Simmons*, 54 O. S., 435.

This is a case where a claim was brought against a man who was doing some painting on a house. The owner of the premises became the owner of the claim before the contract was en-

tered into, and the court held that he had a right to set it off as against the contractor.

. Judge Shauck says, at page 437:

"It is insisted that the ruling below is justified by *Bullock* v. *Horn*, 44 Ohio St., 420. It was there decided that where a mechanic, who under the employment of a contractor, and with the knowledge of the owner, has performed labor upon the construction of a building, and the account not being paid takes the necessary steps to fix the liability of the owner and obtain a lien upon the premises, the owner can not defeat the claim of such mechanic by setting off against it a claim against the contractor, acquired by the owner after the labor was performed. In that case the owner attempted to make the subsequently acquired set-off available against the demand of the mechanic to defeat his right to resort to an indebtedness of the owner to the contractor, which existed when the mechanic performed his labor. The opinion approves the view expressed in Phillips on Mechanic's Liens, that the purpose of laws of this character is 'to take from the owner money actually owing by him upon his contract, and apply it in payment for the labor and material which the workman and material-men have contributed toward the performance of the same contract.'"

It is claimed in the argument that it would be an injustice to these sub-contractors to permit Bailey & Keeley to apply the amount due them from Rose on this contract, because it would make Vogelmeier Bros. pay the claim that was due Rose. But another view of the case is that it would make Bailey & Keeley pay Vogelmeier out of their own funds, if this fund was due them, and the court thinks it was due them at the time.

The court finds for the plaintiff, Lane, and finds that he has the first and best lien, and is entitled to be fully paid; and if there is any excess, it is to be paid to Vogelmeier Bros. There is an excess of several hundred dollars, but not enough to pay Vogelmeier Bros. in full.

By A. A. STASEL: How about the judgment before the squire?

THE COURT: That judgment was paid upon the order of Rose. It is specified that it was Rose's liability; that he agreed to complete the building, and save Bailey & Keeley free from

any damages that might grow out of the erection of the building. The judgment was against them, jointly, but Rose ordered Bailey & Keeley to pay that judgment out of the amount due him. It is tantamount to paying it to Rose. It was paid upon his order.